## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADDIS GEBRESALASSIE, *et al.*,    ) | |
| )  | |
| Plaintiffs,    ) | |
| )  | Civil Action No. 15-00762-CKK |
| v.    ) | |
| )  | |
| DISTRICT OF COLUMBIA,    ) | |
| 441 4th Street, N.W.    ) | |
| Washington, DC 20001    ) | |
| )  | |
| Defendant.    ) | |
| )  | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiffs' efforts to obscure the evident rational bases for regulating private vehicles-for-hire differently from taxicabs do not survive scrutiny. Beyond attempts at procedural dodges, Plaintiffs offer only transparent mischaracterizations of the law and the arguments in Defendant's Motion to Dismiss ("Motion") to defend their claims. Because none of the arguments in Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opposition) succeed, the Court should dismiss their Complaint.

### I.    The Court Should Consider the District's Motion on the Merits.

Plaintiffs assert that the Court should not even address the merits of the District's Motion because it was inadvertently filed four days late. Opp. at 6. This procedural error will be remedied if the Court grants Defendant's *Nunc Pro Tunc* Motion for Enlargement of Time, ECF No. 12. In the interest of brevity, the District incorporates that motion by reference and turns to the remaining issues in the Opposition.

### II.    The District's Motion Was Properly Framed as a Motion to Dismiss.

Plaintiffs' attempt to reframe the District's Motion as one seeking summary judgment is misguided. The District attached the report of the Council of the District of Columbia's

Committee on Transportation and the Environment on the Vehicle-for-Hire Innovation Amendment Act of 2014 ("Innovation Act"), D.C. Act 20-489, as Exhibit B to its Motion. Plaintiffs assert that the committee report is not subject to judicial notice, so the Motion should be converted into one seeking summary judgment. Opp. at 8; *see also Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (stating that a motion to dismiss attaching outside materials to a motion to dismiss will not convert it into a motion for summary judgment if those materials are subject to judicial notice). This attempt fails for three reasons.

First, there is no need for the Court to take judicial notice of the committee report to consider the District's argument in full. The District can advance any rationale, even one that is completely absent from the legislative history, to establish a rational basis for the law. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Moreover, the District does <u>not</u> bear the burden of showing that the rationale it advances is factually supported. Rather, "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). The Court need not accept the Council's rationale or the facts underlying it as true to accept them as a "'conceivable basis'" for rational legislation. *Id.* Without a need to accept the truth of the rationale or underlying facts, there is no reason to convert the Motion into a motion for summary judgment.

Second, the District noted only the content of the report; it did not rely on the truth of any contentious facts it contained. "Courts often take judicial notice of various public records, including legislative committee reports . . . ." *Valiente v. Dineequity, Inc.*, 08-2416-KHV, 2009 WL 1226732, at *1 (D. Kan. May 1, 2009); *see, e.g.*, *Hancock v. Urban Outfitters, Inc.*, 32 F. Supp. 3d 26, 33 & n.7 (D.D.C. 2014). Further, a court can take judicial notice of the existence

and content of a committee report without taking notice of the truth of any of findings in it that are subject to reasonable dispute. *See In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1171 (S.D. Cal. 2010). Here, the District cited to the committee report only to identify the Council's reasoning, not to introduce any facts. Mot. at 5. Thus, even if judicial notice of that rationale—*i.e.*, the content of the report—were necessary, the Motion would remain a motion to dismiss.

Third, nothing in the portion of the committee report on which the District actually relied is reasonably subject to dispute, meaning that they could be subject to judicial notice. *See* Fed. R. Evid. 201(b)(1) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction . . . ."). It is telling that the only portion of the report that Plaintiffs assert is subject to reasonable dispute is not cited or referred to in any way in the Motion. *Compare* Opp. at 8 (citing Mot., Exh. B at 2) *with* Mot. at 5 (citing Mot., Exh. B at 9). The District cited only the report's stated rationale for legislating the fare structure of private vehicles-for-hire differently from taxicabs. *See* Mot. at 5. The only fact used to support the that rationale is that it would be faster to look up the rates for vehicle-for-hire providers on the Internet than to hail a series of taxicabs to ask drivers' rates or to request that information by phoning multiple taxicab companies. *Id.* (citing Mot., Exh. B at 9). This is precisely the kind of generally known fact that would properly be subject to judicial notice, were that even necessary here. Plaintiffs never even mention that portion of the report, much less offer any reason why it would be subject to reasonable dispute.

III.    **Plaintiffs Do Not State an Equal Protection Claim Because They Have Not Demonstrated the Absence of Any Conceivable Rational Basis for Regulating Private Vehicles-for-Hire Differently from Taxicabs.**

Plaintiffs contend that they have stated a claim under the Innovation Act created "arbitrary classifications." Opp. at 11. However, they have come nowhere near meeting their "burden 'to negative every conceivable basis which might support'" the Council's actions. *Beach Commc'ns, Inc.*, 508 U.S. at 315 (quoting *Lehnhausen*, 410 U.S. at 364).

Notably, despite the outspokenness of their rhetoric alleging that regulating private vehicles-for-hire differently from taxicabs is irrational, Plaintiffs do not even address the merits of the cases holding the opposite. *See, e.g.*, *Boston Taxi Owners Ass'n, Inc. v. City of Boston*, 15-10100-NMG, ___ F. Supp. 3d ___, 2015 WL 505397 (D. Mass. Feb. 5, 2015); *Joe Sanfelippo Cabs Inc. v. City of Milwaukee*, 46 F. Supp. 3d 888 (E.D. Wis. Sept. 12, 2014). Instead, they bury their response to those cases in a footnote and merely assert that, because the cases were decided on motions for preliminary injunctions, they do not represent final decisions. Opp. at 10 n.1. That response misses the point. The cases are from other federal district courts, so they are not binding precedent on this case, regardless of whether they were final decisions. They are relevant because of the courts' reasoning explaining why legislating private vehicles-for-hire differently from taxicabs is rational and, therefore, constitutional. Plaintiffs' completely fail to respond to the merits of those courts' holdings or explain why this Court should hold differently.

The District now turns to the eight specific differences in treatment that Plaintiffs allege are unconstitutional.

A.  Ride Fare Pricing

The Innovation Act sets different fare structures for rides initiated by digital dispatches and those initiated by telephone calls or street hails. Mot. at 4-5 (citing D.C. Code § 50-

329.02(b)(1)-(2); *id.* § 50-303(21); D.C. Mun. Reg. tit. 31, § 31-801.7(c)). This difference applies to both digitally dispatched taxicabs and digitally dispatched private vehicles-for-hire. *Id.* The reason for the difference in treatment is that consumers can rapidly compare rates of digitally dispatched vehicles-for-hire but cannot do so for vehicles-for-hire hired by other means. *Id.* at 5. The lower barriers to comparison shopping allow consumers to protect themselves when rates vary. *Id.* By contrast, the inconvenience of comparison shopping by phone or by street hail justifies the District's use of a uniform rate structure for non-digitally dispatched vehicles-for-hire. *Id.*

Plaintiffs dispute this rational basis for not requiring digitally dispatched vehicles-for-hire to use the uniform rate structure. Opp. at 10-12. However, the support for their position does not hold up to scrutiny. Indeed, the bulk of Plaintiffs' argument relies on their continued blatant mischaracterization of the provisions of the Innovation Act. Plaintiffs persist in asserting that the Act treats private vehicles-for-hire differently from taxicabs by requiring only the latter to comply with the uniform rate structure. *Id.* at 10-12. They then attack this purported difference by arguing that the difference in treatment is unjustified when "taxicab drivers take customer requests over website reservation systems and smartphone applications." Opp. at 12.

What this argument ignores is that when a taxicab is digitally dispatched, it is treated is in precisely the same way as a private vehicle-for-hire. As the committee report accompanying the Innovation Act specifically noted, "[a] major benefit to both taxicab drivers and taxicab riders in th[e] legislation is the <u>deregulation of taxicab fares for trips booked through digital dispatch services.</u>" Exh. B at 9 (emphasis added). Under the plain language of the D.C. Code, a company digitally dispatching a taxicab can <u>either</u> set its own rates <u>or</u> charge the uniform rate set by the D.C. Taxicab Commission. D.C. Code § 50-329.02(b)(1). The same is true for private vehicles-

for-hire. *Id.* § 50-329.02(b)(1A). Thus, contrary to Plaintiffs' mischaracterization, there is no difference in fare structures between digitally dispatched taxicabs and digitally dispatched private vehicles-for-hire.

Plaintiffs' only other attempt to rebut the District's consumer protection rationale relies on yet another mischaracterization. Plaintiffs assert that the District's argument somehow "suggest[s] that [private vehicle-for-hire operators] offer consumers some means to bargain over fares and the rates they will be charged . . . and that this consumer bargaining power eliminates a need for state regulation." Opp. at 10. Plaintiffs then proceed to attack the straw man argument they invent. *Id.* at 10-11. Nowhere in its Motion does the District suggest that consumers can bargain when hiring a private vehicle-for-hire. Instead, the District noted that the ease of obtaining information from various digital dispatch companies facilitates comparison shopping, which decreases the extent of ride fare pricing regulation needed to protect consumers in the private vehicle-for-hire market. Mot. at 5. The impracticality of obtaining price information by phone or in person is precisely why the District continues to mandate a uniform fare structure for non-digitally dispatched rides.

B.  <u>Government Fees on Fares</u>

Under the Innovation Act, the District collects one-percent of the gross receipts of all digitally dispatched vehicles-for-hire, which goes to the Public Vehicles-for-Hire Consumer Service Fund. Mot. at 5-6 (citing D.C. Code § 50-329.02(b)(11)). For metered fares, there is a surcharge of twenty-five cents per ride that goes to the Fund. *Id.* (citing D.C. Code § 50-320(a); D.C. Mun. Reg. tit. 31, § 801.7(c)(2)(B); *id.* § 1100.2(a)). As explained in the Motion, accepting as true Plaintiffs' allegation that the twenty-five cent surcharge is ultimately more than one-

percent of the gross receipts from metered fares, that difference is rational because the money in the Fund can benefit taxicab operators but not private vehicle-for-hire operators. *Id.* at 5-7.

Before addressing Plaintiffs' response to this rationale, it is necessary to prevent any confusion that might result from Plaintiffs' continued misstatements of the law. As they did in their Complaint, Plaintiffs falsely conflate all digitally dispatched vehicles-for-hire with private vehicles-for-hire, ignoring the existence of digitally dispatched taxicabs. For example, they state that the law "require[s] taxicab drivers to remit a 25¢ surcharge on every fare to the District, whereas [private vehicle-for-hire operators] are only required to remit 1% of their gross receipts." Opp. at 12. However, taxicab drivers also remit one-percent of their gross receipts if they are digitally dispatched. D.C. Code § 50-329.02(b)(11). Although the Motion noted this conflation in the Complaint, Plaintiffs continued to make it in the Opposition. *See* Mot. at 5 ("The relevant distinction for purposes of the government fee is not between private vehicles-for-hire and taxicabs; it is between metered fares and unmetered fares.").

Turning to the substance of Plaintiffs' response, the Opposition includes two arguments, but neither satisfies Plaintiffs' burden of "negativi[ng] every 'conceivable basis which might support'" it. *Beach Commc'ns, Inc.*, 508 U.S. at 315 (quoting *Lehnhausen*, 410 U.S. at 364). First, Plaintiffs try to cast doubt on the benefit that taxicab operators recoup from the Fund by noting that it only accrues when the Fund exceeds certain benchmarks. Opp. at 12-13. However, by acknowledging that the benefit is "a matter of speculation," Plaintiffs concede that it is at least conceivable. *Id.* at 12. As a result, they have functionally admitted that they cannot meet their burden on this argument. Also, even if that amount is not reached in a given year, it is rational to legislate on that basis for years that it does exceed certain benchmarks. In addition, Plaintiffs' assertion that the money to make taxicabs wheelchair accessible does not benefit them

is baseless. *Id.* Using money from the Fund to re-outfit their taxicabs increases the number of

their potential customers, a benefit that private vehicle-for-hire operators do not receive.

Second, Plaintiffs argue that the distinction between a twenty-five cent surcharge and

one-percent surcharge is "arbitrary," but provide no analysis rebutting the District's stated

rational basis for it. *Id.* at 13. There is nothing arbitrary about assigning a slightly heavier tax

burden to the industry that benefits from that tax. To the extent that Plaintiffs are asserting that

the actual amounts are arbitrary, that assertion alone does not support their equal protection

claim. Any law imposing a tax must establish a formula to determine the amount owed. It is the

function of legislatures to set those formulas. While it is always possible to question why one

formula was used and not another, it is not the provenance of courts to review those legislative

judgments under the guise of an Equal Protection Clause challenge. *See Fitzgerald v. Racing

Ass'n of Cent. Iowa*, 539 U.S. 103, 108-09 (2003). The District had a rational basis for imposing

the surcharges and for collecting more from those who benefit. Plaintiffs have not even

articulated an argument to the contrary, nor have they explained why the method of calculating

the surcharges was an irrational decision by the legislature.

C.  Automobile Insurance

Unlike taxicabs, private vehicles-for-hire have insurance requirements that go up when

they are available for dispatch or carrying customers. Mot. at 7-8 (citing D.C. Code § 50-329c).

Taxicabs, by contrast, can maintain insurance that is substantially lower but the limits of which

do not change. *See id.* at 8 (citing D.C. Code § 50-314(b); D.C. Mun. Reg. tit. 31, § 900.2).

Alternatively, taxicabs can cover their liability through a sinking fund or a surety bond. *Id.* at 7

(citing D.C. Code § 50-314). The reason for this distinction is that private vehicles-for-hire are

more likely to be used as personal vehicles than are taxicabs. *See* Mot., Exh. B at 2. As a result,

the insurance requirements for private vehicles-for-hire change according to the function for which the vehicle is being used.

Significantly, Plaintiffs largely abandon this aspect of their claim as it is set out in the Complaint. The Complaint is based on the incorrect assertion that District law requires taxicab operators to maintain commercial insurance policies. Compl., ¶¶ 64 & 70. Although Plaintiffs repeat that falsehood in the Opposition, the gravamen of their claim shifted to the changing minimum insurance limits applicable to private vehicles-for-hire. Opp. at 14 (wrongly stating that "taxicab drivers [are required] to carry commercial insurance"); *id.* at 14-15 (arguing that the "specialized insurance requirements" for private vehicles-for-hire engaging in a prearranged ride or available for digital dispatch lack a rational basis). Although this new theory is not fairly encompassed by the Complaint and is therefore not properly before the Court, the District nonetheless addresses it on its merits.

Plaintiffs first contend that there is no rational basis for this distinction because taxicabs are used as personal vehicles just as much as private vehicles-for-hire. Opp. at 14. In addition to the inherent implausibility of this assertion, it is legally insufficient. Again, Plaintiffs have the burden of showing that there is no conceivable basis for the Council to mandate different insurance requirements for private vehicles-for-hire. *Beach Commc'ns, Inc.*, 508 U.S. at 315. It is more than conceivable that private vehicles-for-hire are exactly that—private vehicles—while taxicabs are more commercial in nature. Indeed, the committee report accompanying the Innovation Act specifically notes the Council's understanding that the private vehicle-for-hire industry "us[es] vehicles that [a]re the driver's private motor vehicle." Mot., Exh. B at 2. Plaintiffs could not negate the rational basis for the insurance requirement even if they proved

that taxicabs were used as personal vehicles just as often as private vehicles-for-hire, much less by making the unsupported assertion that this is the case.

Plaintiffs next contend that purported gaps in the insurance coverage mandated for private vehicles-for-hire render the coverage so meaningless that mandating coverage does not serve any legitimate government interest. Opp. at 14-15. "It is not enough that the [government] acted in a way that [a plaintiff] believes to be ineffective or even destructive." *Bell v. Duperrault*, 367 F.3d 703, 708 (7th Cir. 2004); *see also Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1051-52 (9th Cir. 2000). Moreover, the purported gap in coverage that Plaintiffs identify is so minimal that it does not have significant effect on the District's legitimate interest in ensuring that customers can recover on claims for injuries resulting from private vehicle-for-hire operators' negligence. The only gap Plaintiffs identify is that a policy meeting the heightened insurance requirements applicable to private vehicles-for-hire <u>might</u> not cover a customer (1) injured as a result of the private vehicle-for-hire, (2)  after the completion of the trip, and (3) after the operator is logged out of the dispatch system. Opp. at 14-15. There is no dispute that the heightened insurance requirements protect passengers throughout their actual ride and whenever the private vehicle-for-hire is available for dispatch. D.C. Code § 50-329c. Thus, the insurance requirements substantially advance the District's legitimate government interests, even if some rare instances might not be covered.

D.  <u>Vehicle Appearance</u>

Taxicabs in the District of Columbia are currently undergoing a mandatory transition to a uniform color scheme, among other changes to their appearance. Mot, at 8 (citing D.C. Code § 50-326(a)(3); D.C. Mun. Reg. tit. 31, § 503.1). Private vehicles-for-hire do not have these

requirements. *Id.* (citing D.C. Code § 50-329d). This difference in treatment is primarily because taxicabs can respond to street hails, although it also advances urban branding. *Id.* at 8-9.

Plaintiffs assert two arguments in response to the District's rational bases for its different regulation of the different categories of vehicles-for-hire. Plaintiffs do not respond at all to the substance of the District's first rationale—that customers need to be able to identify which vehicles can be hailed from the street. Instead, Plaintiffs offer a red herring—that some private vehicles-for-hire may illegally accept street hails. Opp. at 16-17. Not only is this argument irrelevant to the merits of the District's rational basis for its regulations, but it is founded on yet another mischaracterization of the law.

Contrary to Plaintiffs' misrepresentation that a private vehicle-for-hire trip initiated by a street hail is not punishable "as long as there is some electronic record," District law clearly prohibits such trip. *See* Opp. at 17. Under the Innovation Act "[a] private vehicle-for-hire operator . . . shall not solicit or accept street hails. D.C. Code § 50-329e(a). To enforce that provision, vehicle inspection officers can request records under the provision quoted in the Opposition or make traffic stops of private vehicles-for-hire. See D.C. Code § 329.01. The difficulty of obtaining evidence of an illegal street hail that is subsequently booked through a digital dispatch service in no way makes the street hail legal.

Moreover, the legitimate interest in regulating conduct is not eliminated by the possibility of individuals violating the law. It is rational to regulate the way individuals and businesses engage in legal conduct. It is also rational not to impose burdensome requirements across an entire industry because some individuals in that industry violate the law. By analogy, Plaintiffs argue that it is irrational to have special regulations governing pharmacists because some people illegally sell regulated drugs. Under Plaintiffs' reasoning, either all people must become licensed

pharmacists or pharmacists should not have to be licensed. The District clearly has a rational basis for treating taxicabs, which can legally respond to street hails, differently from private vehicles-for-hire, which cannot.

Indeed, Plaintiffs' argument is self-defeating. The District's second rationale for requiring a uniform color scheme is that it helps the District enforce its laws against vehicles other than licensed taxicabs accepting street hails, including private vehicles-for-hire. Mot. at 8. Plaintiffs do not respond to this point at all, meaning that it is conceded. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). This alone is sufficient reason to dismiss this portion of Plaintiffs' claim. Moreover, if Plaintiffs got what they say they want—requiring private vehicles-for-hire to comply with the mandated uniform color scheme—it would actually enable the illegal activity by making it more difficult to identify a private vehicle-for-hire accepting a street hail.

Finally, as to the District's interest in urban branding, Plaintiffs assert that the District does not have a non-arbitrary reason for advancing that interest by requiring taxicabs to use a uniform paint scheme but not private vehicles-for-hire. Opp. at 15-16. In making this argument, Plaintiffs have chosen to disregard the explanation set forth in the District's Motion. *See* Mot. at 9. Again, this difference in regulation reflects the Council's understanding that "unlike most taxicabs, the majority of private vehicles-for-hire are—as the name implies—used primarily as private vehicles. Requiring a private vehicle-for-hire operator to paint his or her personal vehicle would be a substantial burden that would seriously hinder participation in the industry." *Id.* Therefore, taxicabs, as primarily commercial vehicles, are more appropriate for the District's

commercial branding efforts. The only portion of Plaintiffs' Opposition that even touches on this point is to again claim that "[t]axicab drivers own and use their own private vehicles." Opp. at 15-16. As noted above, this assertion is legally insufficient to undermine the Council's understanding to the contrary because it is conceivable that Plaintiffs' factual claim is incorrect. *See* § III.C, above; *see also Beach Commc'ns, Inc.*, 508 U.S. at 315.

    E.  <u>Meter Systems</u>

Taxicabs are required to have meters because they must calculate non-digitally dispatched fares based on the uniform rate structure established by the D.C. Taxicab Commission. Mot. at 9-10; *see* D.C. Code § 50-303(21); D.C. Mun. Reg. tit 31, § 801.7(c). Because private vehicles-for-hire must be digitally dispatched, they do not use the uniform rate structure, so do not need a meter that calculates fares based on that structure. *Id.* at 9 (citing D.C. Code § 50-329.02(b)(1A) & (2); *id.* § 50-303(21)).

Plaintiffs contend that this distinction lacks a rational basis because it depends on the District's rational basis for setting different fare structures for vehicles-for-hire that are digitally dispatched and those that are not. Opp. at 17-18. Notably, Plaintiffs persist in mischaracterizing the distinctions drawn under the Innovation Act. Although they state that "District regulations restrict taxicab drivers to charging compensation on a metered basis," this is only true of non-digitally dispatched taxicabs. Opp. at 17; *see* D.C. Code § 50-329.02(b)(1)-(2); *id.* § 50-303(21). Regardless, Plaintiffs' claim regarding the meters depends entirely on its claim challenging the requirement that non-digitally dispatched taxicabs charge based on the uniform rate structure. Therefore, this claim fails for precisely the same reasons as their claim regarding the uniform rate structure. *See* § III.A, above (explaining that the uniform rate structure is necessary to

protect consumers hiring vehicles-for-hire by means other than digital dispatch because they cannot readily compare rates).

Given the different fare regulations for digitally dispatched fares and non-digitally dispatched fares, it is rational for the District not to impose the burden of obtaining a meter on the owners of vehicles-for-hire that do not calculate their fares using meters. Mot. at 9-10. Plaintiffs do not seriously dispute this point. Rather, they quibble with the characterization of private vehicles-for-hire as "local" businesses because private vehicle-for-hire companies may be located in other parts of the country. Opp. at 18-19. To clarify, the District was referring to private vehicle-for-hire owners and operators, not the companies that run the digital dispatch services. Regardless, the District also has an interest in not imposing arbitrary and senseless burdens on businesses located elsewhere. Doing so would suppress fair competition and hurt consumers in the District of Columbia.

F.  Dome Lights

District law requires taxicabs to have dome lights but does not require them for private vehicles-for-hire. Mot. at 10; *compare* D.C. Code § 50-326(a)(2) *with* D.C. Code § 50-329d. As explained in the Motion, dome lights serve to show potential customers of whether a vehicle is available for a street hail as well as having the secondary function of helping the District enforce regulations governing street hails. Mot. at 10-11. Because private vehicles-for-hire cannot respond to street hails, requiring them to have dome lights would not serve the same functions. *Id.*

Plaintiffs do not respond to two of the rationales for requiring dome lights for taxicabs but not private vehicles-for-hire. It is particularly telling that Plaintiffs do not address the primary rationale for requiring dome lights—informing potential customers that a vehicle can be

hailed off the street. *See* Mot. at 10-11; *see generally* Opp. at 19-20. Again, it is rational not to burden businesses by mandating equipment that serves little purpose. Further, Plaintiffs do not address the analysis that it is less burdensome for taxicabs, which are primarily commercial vehicles, to have a dome light than it is for private vehicles-for-hire, which are primarily personal vehicles. *Id.* By failing to address these points, Plaintiffs concede that each represents a rational basis for the dome light requirement. *Hopkins*, 284 F. Supp. 2d at 25. Thus, this portion of Plaintiffs' claim should be dismissed, even if they could rebut the District's other rationale.

The District's secondary rationale for requiring dome lights on taxicabs is that they assist in enforcing regulations, particularly those related to street hails. Mot. at 9-10. Although Plaintiffs raise two points in response to this reason for the difference in regulations, neither negates the District's enforcement rationale.

Initially, Plaintiffs again rely on the assertion that private vehicles-for-hire illegally respond to street hails to argue that they should be regulated in the same way as taxicabs. Opp. at 19-20. This argument fails in the context of dome lights for the same reasons it failed in the context of uniform color schemes:  the mere possibility of an action being performed illegally does not eliminate the rational basis for regulating that activity when it is done legally, nor does it justify imposing burdensome regulations on an entire industry because of some individuals in that industry breaking the law. *See* § III.D, above.

Next, Plaintiffs assert that both taxicab drivers and private vehicle-for-hire operators can violate regulations, so the District's enforcement interests apply equally to both. What this assertion ignores is that dome lights are more necessary for effective enforcement against taxicabs than for effective enforcement against private vehicles-for-hire. As explained in the Motion, "because private vehicle-for-hire operators are assigned to a particular dispatch, there is

a record of who provides service to the customer[, so] . . . there is less need for alternate means of identifying a vehicle." Mot. at 10. Similarly, there is presumably a record of which operators are logged into the digital dispatch service when a particular request comes in. By contrast, there is no record of a street hail or whether a taxicab is passing by when the street hail happens, so potential customers and D.C. Taxicab Commission vehicle inspection officers need to see the taxicab's identification number to enforce the applicable regulations. Dome lights make this much easier, particularly at night. *See id.* at 9. This is a more than merely rational basis for the difference in regulation, even if enforcement were the only rationale advanced.

G. <u>Credit Card Machines</u>

Taxicabs must have credit card machines in them because they accept in-cab payment of fares by credit card. *See id.* at 11 (citing D.C. Mun. Reg. tit. 31, 603). Private vehicles-for-hire are paid through the digital dispatch company's software application or website, so have no need for a credit card machine to be present in the vehicle. *Id.* It would be an unnecessary burden on business to require private vehicle-for-hire owners to install a machine that they would not use, particularly given that they use their vehicles as personal vehicles. *See id.* Plaintiffs oppose this seemingly self-evident rational basis for the difference in the law in three ways.

First, they assert that the need for credit card machines exists "merely because the District created a disparate system." Opp. at 20. This bare claim of disparity does not shed any light on why the District's approach is purportedly without any rational basis. To the extent that Plaintiffs are merely relying on the arguments they assert in support of other parts of this claim, this argument fails for the same reasons that those do.

Second, Plaintiffs assert that the lack of a rational basis is shown by the requirement that taxicabs use D.C. Taxicab Commission-approved machines and payment service providers,

while private vehicle-for-hire companies can use alternate payment methods. *Id.* at 20-21. However, Plaintiffs never explain how this distinction lacks a rational basis. Indeed, making credit card payments in a taxicab environment raises unique consumer protection concerns that necessitate regulation specific to those concerns.

For example, to protect consumers from overcharging, District law requires that credit card machines be integrated into the larger taximeter system so that the customer cannot "be charged any amount . . . other than a taximeter fare." D.C. Mun. Reg. tit. 31, § 603.8(d). Private vehicles-for-hire do not use taxi meters to calculate their fares, so it would be nonsensical to limit a credit card charge to the metered amount. As another example, to prevent misuse of customers' credit card information, taximeter systems must "[n]ot store, or allow the operator to have access to, the passenger's payment card information after payment authorization has been issued." *Id.* § 603.8(h). Private vehicle-for-hire customers pay only through digital dispatch companies' websites or software applications, so the operators never have access to credit card information. As a result, there is no need to impose special requirements to prevent them from misusing that information.

The District ensures that these requirements are met by licensing payment service providers only if their taximeter systems meet all the requirements and then mandating that taxicab owners obtain their taximeter systems only from a licensed payment service provider. *Id.* § 403.1; *see also id.* § 603.8; § 603.9. Because a private vehicle-for-hire does not have or need a taximeter system (or the credit card machine incorporated into it), it similarly does not need to use a payment service provider that meets the District's licensing standards certifying that the providers' system complies with District regulations.

In sum, the differences between processing a credit card payment in person in a taxicab when the fare is calculated by meter and doing so via a smart phone or computer when the fare is calculated otherwise are more than sufficient to amount to a rational basis for regulating taxicabs and private vehicles for hire differently.

Third, Plaintiffs assert that there is no rational basis for requiring payment service providers to collect certain data through the taximeter system and send it back to the D.C. Taxicab Commission. Opp. at 21-22. Initially, this appears to be an entirely new claim not fairly encompassed by Plaintiffs' Complaint. Plaintiffs pled that the "material" difference in the regulation of taxicabs and private vehicles-for-hire that they are challenging under this point is that the taxicab "Credit Card Machine[s]" are "Regulated by the Commission," while private vehicles-for-hire's are "Not Regulated." Compl., ¶ 70. Nowhere in the Complaint are any allegations specific to the information collected by the taximeter system, of which the credit card machine is only a part. Nonetheless, Plaintiffs have once more mischaracterized the applicable law. Although they do not use taximeter systems, digital dispatch companies must collect and transmit all "anonymous trip data collected by a taximeter system . . . to the Commission for all trips." D.C. Code § 50-329.02(c-1). The non-substantive difference in how the information is collected—whether by taximeter system or otherwise—is more than rationally supported by the simple fact that private vehicles-for-hire do not have or need such a system.

H.  Licensing

The licensing requirements for taxicabs and their operators differ from those for private vehicles-for-hire and their operators. Mot. at 12; *compare, e.g.*, D.C. Code § 47-2829; D.C. Mun. Reg. tit. 31, § 1010.15 *with* D.C. Code § 50-329a; *id.* § 50-329b. These differences reflect the

different requirements that those licenses certify the operators and vehicles meet. *See* Mot. at 12-13.

In defense of their challenge to these differences, Plaintiffs again turn to the empty argument that there is no rational basis for them because they are based on other differences that are purportedly unjustified. Opp. at 23-24. Plaintiffs' position is equally unavailing here. Specifically, Plaintiffs merely assume that they have demonstrated that the District's different regulations governing taxicabs and private vehicles-for-hire lack any rational basis. They do not make any substantive argument in this portion of their Opposition to prove that claim. This portion of their claim rests entirely on the other portions and fails for the same reasons. Plaintiffs also never challenge the substance of the differences between the requirements to operate a taxicab and a private vehicle-for-hire, so that aspect of their claim rests on nothing at all.

### IV. **Plaintiffs Do Not State a Substantive Due Process Claim Because the Value of Their Taxicab Licenses Has Not Been Eliminated and Because the District Had a Rational Basis for Enacting the Innovation Act.**

Establishing a substantive due process claim requires that Plaintiffs plead both that they were deprived of a protected property interest and that the deprivation had no rational basis. *Am. Council of Life Insurers v. D.C. Health Benefit Exchange Auth.*, 14-cv-1138 (BAH), ___ F. Supp. 3d ___, 2014 WL 5893464, at *22 (D.C. Cir. Nov. 13, 2014). Plaintiffs have pled neither.

Plaintiffs have not suffered the loss of a property interest because they have alleged only a decrease in the value of their taxicab licenses. *See Minneapolis Taxi Owners Coal. v. City of Minneapolis*, 572 F.3d 502, 510 (8th Cir. 2009) (holding that the decrease in value of a taxi license does not state a substantive due process injury). The only response Plaintiffs make to this point is that their "taxicab licenses have . . . been entirely devalued" because private vehicle-for-

hire operators "provide the same license-only service without any license." Opp. at 26. However, this is simply untrue.

As noted throughout the Motion and this reply, private vehicle-for-hire operators cannot legally respond to street hails or be dispatched by telephone. *See* D.C. Code § 50-329e(a)(1); *id.* § 50 303(16A). Thus, Plaintiffs' licenses continue to give them a monopoly over rides initiated by those methods. This exclusive right is precisely the type of property interest that Plaintiffs claim has been taken from them. *See* Opp. at 27. The fact that their licenses still confer a monopoly on them means that they retain value and, thus, Plaintiffs have not lost any property interest in the licenses. *See Minneapolis Taxi Owners Coal.* 572 F.3d at 510; *Boston Taxi Owners Ass'n, Inc. v. City of Boston*, 2015 WL 505397, at *5.

Even had Plaintiffs lost a property interest, however, they would still not state a substantive due process claim because the District has rational bases for the differences in its laws regulating taxicabs and private vehicles-for-hire. These bases have been discussed extensively, so there is no need to restate them here. *See* § III, above; Mot. § I;. Plaintiffs' sole response to this point is to rely on their arguments to the contrary in the Opposition. These arguments fail for precisely the reasons discussed in this reply. *See* § III, above.

## V.    Plaintiffs' Do Not State a Claim Under the D.C. Home Rule Act Because They Have Not Pled Any Constitutional Violation.

Regarding Plaintiffs' D.C. Home Rule Act claim, as noted in the Motion, it depends entirely on their other claims succeeding. Mot. at 14-15. Plaintiffs concede as much in their Opposition. Opp. at 28. Thus, it fails for the same reasons as their other claims.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

DATE:  July 16, 2015    Respectfully submitted,

           KARL A. RACINE
           Attorney General for the District of Columbia

           ELIZABETH SARAH GERE
           Acting Deputy Attorney General
           Public Interest Division

           /s/ Toni Michelle Jackson
           TONI MICHELLE JACKSON [D.C. Bar No. 453765]
           Chief, Equity Section
           441 4th Street, N.W.
           6th Floor South
           Washington, DC 20001
           Telephone:  (202) 442-9784
           E-mail:  toni.jackson@dc.gov

           /s/ Gary Feldon
           GARY FELDON [D.C. Bar No. 987142]
           Assistant Attorney General
           441 Fourth Street N.W.
           6th Floor South
           Washington, DC 20001
           Telephone:  (202) 724-5691
           Facsimile:  (202) 730-0640
           Email:  gary.feldon@dc.gov