**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ADDIS GEBRESALASSIE, *et al.*,<br>          Plaintiffs<br><br>          v.<br><br>DISTRICT OF COLUMBIA,<br>          Defendant |

Civil Action No. 15-762 (CKK)

**MEMORANDUM OPINION**
(March 18, 2016)

Plaintiffs, six individual taxicab drivers and the Washington D.C. Metro Taxi Operators

Association, bring suit against the District of Columbia on behalf of themselves and on behalf of

a putative class of District of Columbia taxicab drivers, claiming that the District's Vehicle-for-

Hire Innovation Amendment Act of 2014 is unconstitutional. Specifically, they claim that the

statutory scheme creates a two-tiered system for regulating taxicabs and digitally dispatched

transportation services, such as Uber and Lyft, and that the two-tiered system result in an Equal

Protection violation and a Substantive Due Process violation. Plaintiffs also claim that, as a result

of these alleged constitutional violations, the District of Columbia exceeded its authority under

the District of Columbia Home Rule Act. Before the Court is Defendant's [9] Motion to Dismiss.

Defendant argues that the Complaint fails to state an Equal Protection claim or a Substantive Due

Process claim under the Constitution and that it fails to state a claim under the District of

Columbia Home Rule Act. Upon consideration of the pleadings,[1] the relevant legal authorities,

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 9;
- Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 11; and
- Def.'s Reply in Supp. of its Mot. to Dismiss ("Def.'s Reply"), ECF No. 13.

In an exercise of its discretion, the Court finds that holding oral argument in this action would
not be of assistance in rendering a decision. *See* LCvR 7(f).

and the record for purposes of this motion, the Court GRANTS Defendant's [9] Motion to

Dismiss. This case is dismissed in its entirety.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-

pleaded allegations in Plaintiffs' Complaint. The Court does "not accept as true, however, the

plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*

*v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court reserves further

additional presentation of the background, as necessary, for the discussion of the legal issues

below.

On November 18, 2014, then-Mayor of the District of Columbia Vincent C. Gray signed

the Vehicle-for-Hire Innovation Amendment Act of 2014, which had previously been passed by

the District of Columbia Council. *See* Vehicle-For-Hire Innovation Amendment Act of 2014,

2014 District of Columbia Laws 20-197 (Act 20-489). The Act went into effect on March 10,

2015, after Congress took no action on it. In the Act itself, its purpose was described as follows:

> AN ACT to amend the District of Columbia Taxicab Commission Establishment
> Act of 1985 to define a private vehicle-for-hire company and operator, to clarify
> the authority of vehicle inspection officers to make stops, to clarify the complaint
> authority of the District of Columbia Taxicab Commission, to create registration
> provisions for operators, to require background checks for operators, to prohibit
> street hails by operators, to require a private vehicle-for-hire company to conduct
> background checks, inspect vehicles, establish zero tolerance policies against
> discrimination and drug and alcohol use by operators, to require transmission of
> 1% of all gross receipts to the Office of the Chief Financial Officer, to require
> insurance for operators, to create provisions for charging for services, to provide
> for enforcement against private vehicles-for-hire, to deregulate fares for taxicabs
> arranged through digital dispatch, to clarify data and surcharge transmission
> requirements, and to require that a notice be posted in all taxicabs regarding
> acceptance of credit cards; to amend section 47-2829 of the District of Columbia
> Official Code to exempt private vehicles-for-hire from the license requirement
> and to clarify eligibility for a for-hire license; and to amend Title 18 of the District
> of Columbia Municipal Regulations to reduce the inspection requirement for
> taxicabs from semiannually to annually.

2014 District of Columbia Laws 20-197 (Act 20-489). There is no dispute that the Act had the effect of both legalizing and regulating transportation services organized through "digital dispatch," that is through an "app" on a mobile device, such as a "smartphone," and provided by companies such as Uber and Lyft. There is also no dispute that the regulatory requirements applicable to digitally-dispatched "private vehicles for hire," as termed by the statutory scheme, differ in at least some respects from those applicable to taxicabs. The Court proceeds now to explain the statutory scheme, with particular emphasis on the distinctions that serve as the bases for Plaintiffs' claims. Before doing so, the Court notes that, even though the Court must take Plaintiffs' factual allegations as true, where Plaintiffs' allegations regarding the content of the statutory scheme themselves deviate from the scheme itself, the Court relies—as it must—on the statute and regulations themselves rather than on the allegations in the Complaint.

The Vehicles-for-Hire Act amends the District's statutory governing scheme for taxicabs and other related transportation services and creates two categories of transportation service providers: private vehicles-for-hire and public vehicles-for-hire. A private vehicle-for-hire is defined as "a class of transportation service by which a network of private vehicle-for-hire operators in the District provides transportation to passengers to whom the private vehicle-for-hire operators are connected by digital dispatch." D.C. Code § 50-301.03 (16A) (2016).[2] A public vehicle-for-hire is defined as "a class of transportation service by motor vehicle for hire in the District, including a taxicab, limousine, or sedan-class vehicle, that provides for-hire service exclusively using drivers and vehicles licensed pursuant to this subchapter and § 47-2829." *Id.*

---

[2] Many of the provisions of the D.C. Code relevant to this action were re-codified on July 1, 2015. For instance, what was section 50-329.02 was re-codified as section 50-301.31. The Court refers to the sections according to the current codification scheme but notes that those references diverge at times from the ones used by the parties in their briefing.

§ 50-301.03(17). The statute further defines the three types of vehicles that make up the class of

public vehicles for hire:

> (14) "Limousine" means a public vehicle-for-hire that operates exclusively
> through advanced registration, charges exclusively on the basis of time, and shall
> not accept street hails.

> (20) "Sedan-class vehicle" means a public vehicle-for-hire that operates
> exclusively through digital dispatch, charges on the basis of time and distance,
> except for trips to airports, and other point-to-point trips based on well- traveled
> routes or event-related trips such as sporting events, which may be charged on a
> flat-fee basis, and shall not accept street hails.

> (21) "Taxicab" means a class of public vehicle-for-hire that may be hired by
> dispatch, digital dispatch, or hailed on the street, and for which the fare charged is
> calculated by a Commission-approved meter with uniform rates determined by the
> Commission; provided, that a taxicab hired by a passenger through digital
> dispatch may use rates set by the company that operates the digital dispatch
> pursuant to the requirements of this subchapter.

*Id.* § 50-301.03(14), (20), (21). Because Plaintiffs' claims are based on the distinctions between

private vehicles-for-hire—or, as Plaintiffs call them, "*De Facto* Taxicab Service Providers"—and

taxicab operators, the Court does not discuss further the "limousine" and "sedan-class vehicle"

subcategories of public vehicles-for-hire; it includes them here only to indicate the full scope of

the legislative scheme.

The statute further defines the several methods of arranging transportation by "vehicle-

for-hire." Dispatch is defined as "the traditional methods of pre-arranging vehicle-for-hire

service, including through telephone or radio." *Id.* § 50-301.03(8B). Digital dispatch is defined

as "the hardware and software applications and networks, including mobile phone applications,

which passengers and operators use to provide public and private vehicle-for-hire service." *Id.*

§ 50-301.03(8A). In common parlance, this includes "apps" (or applications) on mobile devices,

such a "smartphones." The statute does not define but discusses "street hails," as well. With

respect to these methods of arranging transportation, private vehicles-for-hire may be arranged

*only* by digital dispatch; by contrast, transportation by taxicab may be arranged by (1) dispatch (the traditional version), (2) digital dispatch, and (3) street hail. *Id.* § 50-301.03(16A), (21).

The statute sets various requirements for the several types of transportation services encompassed within it. Before turning to the individual features of the vehicle-for-hire licensing scheme that are challenged in this action, the Court notes that some of those requirements are addressed to the *type of dispatch* for an individual ride while others are addressed to the *type of vehicle* or *type of operator*. *Compare id.* § 50-301.26(a)(3) (uniform color scheme required for *all* taxicabs) *with id.* § 50-301.03(14), (16A), (20), (21) (transportation arranged by traditional dispatch or street hail must be charged by approved metered-pricing rates). The Court briefly introduces the specific requirements challenged through Plaintiffs' Equal Protection claim, as categorized by the parties, *see* Compl. ¶ 70, with further elaboration reserved for the discussion below.

1. **Ride fare.** For taxicab transportation arranged by traditional dispatch or by street hail, the fare is calculated pursuant to a metered-pricing scheme set by the District of Columbia Taxicab Commission. D.C. Code § 50-301.03(21) (2016). For all fares not charged according to the Taxicab Commission metering scheme, "before booking a vehicle the company shall disclose to the customer the fare calculation method, the applicable rates being charged, and the option for an estimated fare." *Id.* § 50-301.31(b)(2). For a taxicab ride arranged by digital dispatch, the fare may be calculated pursuant to the Taxicab Commission metering scheme *or* pursuant to a "time and distance charge set by the" taxicab company. *Id.* § 50-301.31(b)(1). For a digitally dispatched ride by a private vehicle-for-hire—which is to say all rides by those providers—the private vehicle-for-hire operator is free to set its own pricing scheme. *Id.* § 50-301.29f. However, during a state of emergency declared by the Mayor of the District, the use of "surge pricing" for rides arranged by digital dispatch is limited. *See id.* § 50-301.31(b)(13).

2. **Passenger surcharge.** A "company that uses digital dispatch for private or public vehicles-for-hire other than taxicabs shall transmit to the Office of the Chief Financial Officer 1% of all gross receipts for trips that physically originate in the District." *Id.* § 50-301.31(b)(11). Such money is to be paid into the Public Vehicles-for-Hire Consume Service Fund. *Id.* For taxicab fares arranged by street hail, traditional dispatch, or digital dispatch where the digital dispatching system does not process the

payments, the taxicab operator must charge a surcharge of $0.25 per trip. D.C. Mun. Reg. tit. 31, § 801.7(c)(2)(B).[3] Such money also is dedicated to the Consumer Service Fund. D.C. Code. § 50-301.31(b)(12) (2016).

3.  **Insurance.** Private vehicle-for-hire operators are required to carry increased coverage for periods when "the operator is engaged in a prearranged ride" and when the "operator is logged onto a private vehicle-for-hire company's digital dispatch showing that the operator is available to pick up passengers but is not engaged in a prearranged ride." *Id.* § 50-301.29c(a), (b). Taxicab operators must carry insurance coverage at all times but the required level of coverage is lower than the required coverage level for private vehicles-for-hire.[4] *See id.* § 50-301.14. As an alternative, taxicab operators may satisfy this requirement through a sinking fund or surety bond. *Id.* § 50-301.14.

4.  **Vehicle color and appearance.** A requirement that taxicabs conform to a uniform color and marking system is currently being phased in. *Id.* § 50-301.26(a)(3). Specifically, taxicabs must be painted red with a grey stripe on the side as specified in the regulations promulgated by the Taxicab Commission. D.C. Mun. Reg. tit. 31, § 503.3. By contrast, a private vehicle-for-hire is only required to "display a consistent and distinctive trade dress consisting of a logo, insignia, or emblem at all times while the operator is logged into the private vehicle-for-hire company's digital dispatch." D.C. Code § 50-301.29d (2016).

5.  **Meter system.** Taxicabs are required to have meter systems that allow the taxicabs to charge the metered fares set by the Taxicab Commission, which must satisfy certain regulatory requirements. *Id.* §§ 50-301.26(a)(1), 50-301.03(21). Private vehicles-for-hire are not required to maintain any metering system.

6.  **Dome light.** Taxicabs are required to have dome lights "that clearly display a taxicab's identification number, as well as identify when a taxicab is occupied, on-call, off-duty, or available to accept a fare." *Id.* § 50-301.26(a)(2). Private vehicles-for-hire are not required to include a "dome light."

7.  **Credit card machine.** Taxicabs are required to maintain on-board machines that can accept payment by credit card and debit cards and meet certain requirements set by

---

[3] It appears that Defendant's statement that taxicab drivers must remit 1% of their gross receipts if they are digitally dispatched is incorrect. *Cf.* D.C. Code § 50-301.31(b)(1) (2016) (A "company that uses digital dispatch for private or public vehicles-for-hire *other than taxicabs* shall transmit to the Office of the Chief Financial Officer 1% of all gross receipts for trips that physically originate in the District.") (emphasis added). The Court elaborates on this discrepancy below and concludes that it is not material to the questions raised by the motion before the Court.

[4] Plaintiffs do not contest the District's factual characterization of the differences between the insurance requirements for the two types of vehicles-for-hire. *See* Pls.' Opp'n at 14-15.

statute and regulation. *Id.* § 50-301.26(a)(1). Private vehicles-for-hire are not required to include a credit card machine.

8.  **Licensure.** Taxicab drivers are required to maintain a Face ID, and every vehicle used as a taxicab must have an H-tag license. *See* D.C. Mun. Reg., tit. 31, §§ 1000.1, 1010.30.Taxicab drivers are also required to meet certain qualifications in order to qualify for a Face ID. *See* generally D.C. Code § 47-2829 (2016). By contrast, a private vehicle-for-hire operator is not required to have a Face ID, and a private vehicle-for-hire is not required to have an H-tag. Compl. ¶ 63. However, a private vehicle-for-hire operator is required to maintain a valid Maryland, Virginia, or District of Columbia drivers' license and to undergo a background check. D.C. Code. §§ 50-301.29b, 50-301.29e(a)(3) (2016). Certain categories of people, including people with specified past convictions or listings on a sex offender registry, are barred from serving as a private vehicle-for-hire operator. *Id.* § 50-301.29b(c).

Plaintiffs claim that these distinctions between taxicabs and private vehicles-for-hire operators constitute a violation of the Equal Protection Clause. Plaintiffs also claim that these requirements, taken together, constitute a deprivation of their property interest in their taxicab licenses and, therefore, constitute a Substantive Due Process violation. Finally, Plaintiffs claim that, as a result of those alleged constitutional violations, the District of Columbia has exceeded its authority under the Home Rule Act. Defendant has moved to dismiss the Complaint in its entirety, and that motion is now ripe for resolution.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

The Court first turns to Plaintiffs' Equal Protection claim, followed by their Substantive Due Process claim. The Court concludes with a brief discussion of Plaintiffs' claim under the Home Rule Act.

### A. Equal Protection Claim

Plaintiffs claim that the classification scheme of the Vehicles-for-Hire Act violates the Equal Protection Clause.[5] Plaintiffs have not alleged that the classification scheme "implicates any fundamental right or categorizes on any inherently suspect basis." *Flytenow, Inc. v. F.A.A.*, 808 F.3d 882, 895 (D.C. Cir. 2015). Therefore, as Plaintiffs acknowledge, Plaintiffs' claim is subject only to rational basis review. "To succeed, [Plaintiffs] would have to negate 'every conceivable basis which might support' the challenged classification." *Id.* (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). "Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not

---

[5] The "Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment," *Dixon v. District of Columbia*, 666 F.3d 1337, 1339 (D.C. Cir. 2011).

'any reasonable conceivable state of facts that could provide a rational basis for the classification.' " *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) *(per curiam opinion)* (quoting *Dumaguin v. Sec'y of Health and Human Servs.,* 28 F.3d 1218, 1222 (D.C. Cir. 1994)).

As the Supreme Court has emphasized, "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' " *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (quoting *Beach Communications,* 508 U.S. at 313). Moreover, this form of review does not "authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *Id.* (quoting *New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) *(per curiam)* (alteration in original)).

With this in mind, the Court turns to the individual features of the vehicles-for-hire licensing scheme that are the bases for Plaintiffs' Equal Protection claim. However, before addressing the details of that scheme, the Court pauses to emphasize one central fact of the scheme that risks being obscured by the numerous details discussed below: taxicabs are the *only* vehicles-for-hire available for street hail. Neither private vehicles-for-hire, nor any of the other categories of public vehicles-for-hire, are available for street hail. As discussed further below, that fact is sufficient to justify many of the distinctions in the legislation enacted by the District of Columbia. The Court now proceeds to analyze the parties' arguments about the challenged requirements pursuant to the categorization scheme introduced by Plaintiffs and used by the parties in their briefing, *see* Compl. ¶ 70.

1. **Ride fare**

Plaintiffs claim that the distinctions between the regulation of fares for taxicabs and for private vehicles-for-hire violate the Equal Protection Clause. As described above, for taxicab transportation arranged by traditional dispatch or by street hail, the fare is calculated pursuant to a metered-pricing scheme set by the District of Columbia Taxicab Commission. D.C. Code § 50-301.03(21) (2016). For all fares not charged according to the Taxicab Commission metering scheme, "before booking a vehicle the company shall disclose to the customer the fare calculation method, the applicable rates being charged, and the option for an estimated fare." *Id.* § 50-301.31(b)(2). For a taxicab ride arranged by digital dispatch, the fare may be calculated pursuant to the Taxicab Commission metering scheme *or* pursuant to a "time and distance charge set by the" taxicab company. *Id.* § 50-301.31(b)(1). For a digitally dispatched ride by a private vehicle-for-hire—which is to say all rides by those providers—the private vehicle-for-hire operator is free to set its own pricing scheme. *Id.* § 50-301.29f. However, during a state of emergency declared by the Mayor of the District, the use of "surge pricing" for rides arranged by digital dispatch is limited. *See id.* § 50-301.31(b)(13).

As an initial matter, the Court notes that Plaintiffs have mischaracterized the relevant provisions of the scheme. Contrary to Plaintiffs' assertions, Opp'n at 11-12, the statutory scheme does not distinguish between taxicab drivers and private vehicle-for-hire operators. Rather, the scheme distinguishes between rides arranged by digital dispatch and rides arranged by street hail or traditional dispatch. With respect to rides arranged by digital dispatch, the statute does not generally restrict the setting of fares, except in declared states of emergency, as described above. With respect to rides arranged by street hail or by traditional dispatch, such as telephone call, the fares are governed by the metered pricing scheme promulgated by the Taxicab Commission. The District of Columbia justifies this distinction on the basis of the relative ability of consumers to

10

ensure that they are charged a fair rate when using the different methods of arranging transportation. Specifically, the District of Columbia has concluded that digital dispatch allows consumers to immediately obtain a fare for the planned trip and that it allows customers to comparison shop easily among different companies that provide private vehicle-for-hire services. By contrast, the District concluded that a customer could not practically negotiate among several taxicab companies when hailing a vehicle on the street or when arranging a ride by telephone.

Aside from their mischaracterization of the statutory scheme, Plaintiffs respond that the reason customers cannot comparison shop for taxicab rides, other than those arranged by digital dispatch, is because taxicabs are not free to use market pricing. Of course, comparison shopping would be futile now given that the District mandates metered pricing for taxicab rides arranged by street hail or traditional dispatch. But that misses the point. The District concluded that the *method* of arranging a ride determines the ease with which a customer can obtain a predictable estimate of the fare and can comparison shop among different providers. That is, it is impractical to attempt to negotiate with several taxicabs while hailing one on the street. Similarly, it is difficult to comparison shop and ensure fair, predictable fares when arranging a ride by telephone. The Court need not engage in any additional empirical analysis to conclude that the District has presented a rational basis for the distinction in the applicable pricing rules, and Plaintiffs have not presented anything to rebut the rational justification presented. Ultimately, the District's assessment of the differences between arranging for transportation via different forms of technology, whether street hail or telephone or mobile app, is enough to sustain the difference in how those fares are regulated.

### 2. Passenger surcharge

Plaintiffs next claim that differences in the surcharge applied to different forms of vehicle-for-hire services violate the Equal Protection Clause. As described above, a "company that uses digital dispatch for private or public vehicles-for-hire *other than taxicabs* shall transmit to the Office of the Chief Financial Officer 1% of all gross receipts for trips that physically originate in the District." *Id.* § 50-301.31(b)(11) (emphasis added). Such money is to be paid into the Public Vehicles-for-Hire Consumer Service Fund. *Id.* For taxicab fares arranged by street hail, traditional dispatch, or digital dispatch where the digital dispatching system does not process the payments, the taxicab operator must charge a surcharge of $0.25 per trip. D.C. Mun. Reg. tit. 31, § 801.7(c)(2)(B). Such money also is dedicated to the Consumer Service Fund. D.C. Code. § 50-301.31(b)(12) (2016). It is somewhat unclear whether taxicab trips arranged digitally where payment *is* processed through a digital dispatching system are required to pay a $0.25 per ride surcharge.[6] It may be that there is *no* surcharge *or* indirect gross receipts fee charged on taxicab fares that are digitally dispatched, where the digital dispatching system *does* process the payments. *Cf.* D.C. Mun. Reg. tit. 31, § 801.7(c)(2)(B) (surcharge for only for certain taxicab fares); *but cf. id.* § 1103.1 ("Each trip provided by taxicab licensed by the Office, shall be assessed a twenty-five cent ($0.25) per trip passenger surcharge"). Importantly, Plaintiffs only allege that the surcharge is applicable to fares collected via the "modern taximeter system" required by the Taxicab Commission, and the Complaint does not include any allegations regarding the assessment of surcharges on fares for rides organized by digital dispatch where

---

[6] It appears that Defendant's statement that taxicab drivers remit 1% of their gross receipts if they are digitally dispatched is incorrect. *Compare* Def.'s Reply at 7 *with* D.C. Code § 50-301.31(b)(1) (2016) (A "company that uses digital dispatch for private or public vehicles-for-hire *other than taxicabs* shall transmit to the Office of the Chief Financial Officer 1% of all gross receipts for trips that physically originate in the District.") (emphasis added).

payment is through the digital dispatch service itself. *See* Compl. ¶ 37. Therefore, the Court assumes for the purposes of this analysis that no surcharge is applicable for this category of rides, but the Court notes that, even if a surcharge were applicable to those rides, it would not affect the outcome of the Court's analysis.

In Plaintiffs' Opposition, Plaintiffs argue that the District arbitrarily charges taxicab providers more through the surcharge levied than it charges the private vehicle-for-hire through the gross receipts fee. The Courts notes that Plaintiffs do not allege in their Complaint that the overall financial burden of the surcharges is greater on them than on private vehicles-for-hire.[7] Plaintiffs describe the discrepancy in the fares collected and only allege that "for any individual fare of less than $25, the *De Facto* Taxicab Service Providers remit substantially less of their collected fares to the District of Columbia than the Taxicab Service Plaintiffs." Compl. ¶ 68.[8] It is true as a matter of simple mathematics that, for any fare less than $25, a 1% gross receipts fee will be less than a $0.25 per-ride surcharge. Similarly, it is a matter of simple mathematics that, for any fare greater than $25, a 1% gross receipts fee will be greater than a $0.25 per-ride surcharge. So, too, it is true that the greater the *difference* between a fare and $25, the greater *discrepancy* between a 1% gross receipts fee and a $0.25 per-ride surcharge. That said, the Court assumes for the remainder of the analysis, as the District did in its briefing, that the financial burden on the taxicab providers is in fact greater than the burden on private vehicles-for-hire operators.

---

[7] Defendant's statement to the contrary appears to have no basis in the Complaint. *See* Def.'s Mot. at 6 (citing Compl. ¶ 8).

[8] Plaintiffs also allege that the "surcharge augments the cost of taxicab service to the passenger, thereby making the price of taxicab service less competitive, without providing any additional revenue or benefit to the driver." Compl. ¶ 37. But that assessment applies equally to any surcharge, as well as any gross receipts fee, and does not suggest a distinction between taxicabs and other transportation services that could constitute the basis for an Equal Protection claim.

Assuming that the financial burden on taxicab operators is heavier than the burden on private vehicles-for-hire operators, the District argues that this difference is justified by the ultimate use of the funds collected through these fees and surcharges. Specifically, the District argues that a heavier burden on taxicabs is justified because the Public Vehicles-for-Hire Consume Service Fund may be used for purposes that effectively aid taxicabs, but not private vehicles-for-hire. Specifically, the Fund is authorized for use for the following purposes:

(A) [It] [s]hall be used to pay the costs incurred by the Commission, including operating and administering programs, investigations, proceedings, and inspections, administering the Fund, and improving the District's vehicle-for-hire industry.

(B) May be used to provide grants, loans, incentives, or other financial assistance *to owners of licensed taxicabs* legally operating and incorporated in the District to offset the cost of acquiring, maintaining, and operating wheelchair-accessible vehicles;

(C) May be used to establish a program to provide a *taxicab fare discount* for low-income senior citizens aged 65 years and older and persons with disabilities; and

(D) May be used to provide grants, loans, incentives, or other financial assistance *to owners of licensed taxicabs* legally operating and incorporated in the District to incentivize the purchase and use of alternative-fuel vehicles, directing licensed taxicabs to underserved areas, and to offset costs associated with meeting the mandates of this subchapter, as established by rulemaking.

D.C. Code § 50-301.20(b)(1) (2016) (emphasis added). The District emphasizes that the latter three purposes aid taxicab providers in addition to serving the other goals of those provisions, such as aiding elderly people. In response, Plaintiffs argue that it is speculative whether any money will reach the hands of taxicab owners. They emphasize that the statute also provides that for fiscal years 2014 and 2015 the first $4.7 million in funds must be used to support the operations of the Taxicab Commission and that $750,000 of the remaining funds must be used to increase the number of wheelchair-accessible taxicabs, pursuant to subsection (B) above. *Id.*

§ 50-31.20(b)(2). Accordingly, Plaintiffs argue that it is unknown whether any funds will remain to be allocated for the third and fourth purposes enumerated by the statute.

The Court first notes that the provision requiring certain allocations of funds does not appear to have been renewed for fiscal year 2016, which began on October 1, 2015, and beyond. In any event, the Court agrees with Defendant that it is important that the second, third, and fourth purposes enumerated by the statute each benefit taxicabs in some fashion. The Court agrees that this connection is sufficient to support any incrementally greater financial burden that falls on the taxicab operators as a result of the distinction between the $0.25 per-ride surcharge applicable to taxicabs and the 1% gross receipts fee levied on private vehicles-for-hire.

Even aside from the ultimate financial burden on the operators, Plaintiffs suggest that the discrepancy in the method of collection—a 1% fee in comparison to a $0.25 per-ride surcharge— is arbitrary. The Court disagrees. Factually, metered taxicab fares are calculated via a different method than digitally dispatched rides. Moreover, the Court determined above that Plaintiffs' allegations do not present any basis to conclude that the discrepancy in the payment methodologies is not rational. So, too, the distinction between the two methods of levying a surcharge for use for the Public Vehicles-for-Hire Consume Service Fund is rational. *See Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 110 (2003) (upholding two-tier tax classification upon concluding that "there is 'a plausible policy reason for the classification,' that the legislature 'rationally may have ... considered ... true' the related justifying 'legislative facts,' and that the 'relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.' " (citation omitted)).

For all of these reasons, the Court finds that Plaintiffs' allegations do not provide any basis for a conclusion that the distinctions between the fees and surcharges levied are not rational. Therefore, this surcharge and fee scheme survives Plaintiffs' Equal Protection challenge.

### 3. Insurance

Next, the Court turns to the insurance requirements applicable to the several types of vehicles-for-hire. Private vehicle-for-hire operators are required to carry increased coverage for periods when "the operator is engaged in a prearranged ride" and when the "operator is logged onto a private vehicle-for-hire company's digital dispatch showing that the operator is available to pick up passengers but is not engaged in a prearranged ride." D.C. Code § 50-301.29c(a), (b) (2016). Taxicab operators must carry insurance coverage at all times but the required level of coverage is lower than the required coverage level for private vehicles-for-hire.[9] *See id.* § 50-301.14. As an alternative, taxicab operators may satisfy this requirement through a sinking fund or surety bond. *Id.* § 50-301.14.

The gravamen of Plaintiffs' claim is somewhat unclear. In their Complaint, Plaintiffs allege that taxicabs are required to have commercial insurance while private vehicles-for-hire are not required to do so. Compl. ¶ 70. Plaintiffs suggest that this distinction is irrational. However, that claim is simply incorrect as taxicabs are not required to maintain commercial insurance. *See* D.C. Mun. Reg., tit. 26A, § 26A-801.4 (describing coverage requirements for taxicabs). As Defendant notes, Plaintiffs emphasize in their Opposition differences in the scope of the applicable requirements. *See* Pls.' Opp'n at 14-15. They argue that the discrepancy in the applicable requirements as to the two categories of vehicles is irrational because all of the

---

[9] As noted above, Plaintiffs do not contest the District's factual characterization of the differences between the insurance requirements for the two types of vehicles-for-hire. *See* Pls.' Opp'n at 14-15.

vehicles in question are private vehicles, operated privately, and used at certain times for the purpose of transporting members of the public as passengers. In particular, Plaintiffs emphasize that there are gaps in the coverage for private vehicles-for-hire and that, as a result of those gaps, the entire coverage scheme is arbitrary. Defendant argues that these claims are not fairly encompassed within the Complaint. In any event, the Court agrees with Defendant that Plaintiffs have not carried their burden when facing a motion to dismiss regarding an Equal Protection challenge to the insurance requirements.

In creating the challenged insurance scheme, the District of Columbia Council concluded that taxicabs are likely to be used more often to provide transportation services than private vehicles-for-hire are likely to be used for such services. Therefore, the Council concluded that it was proper to limit the heightened coverage requirements for private vehicles-for-hire to the times when such vehicles are engaged in providing transportation services. By contrast, the Council concluded that, in light of the nature of the taxicab business, the insurance requirements applicable to taxicabs ought not be limited to the times at which a given vehicle is being used to transport customers. The Court need not assess any data regarding the relative usage of taxicabs and private vehicles-for-hire in order to conclude that the District has presented a rational basis for this conclusion and, concomitantly, for the distinctions in the insurance coverage requirements. As a result, the Court concludes that the Complaint does not include allegations that could support the conclusion that there is no rational basis for the distinctions in the insurance scheme, and Plaintiffs' Equal Protection claim fails as to the insurance coverage scheme.

### 4.   Vehicle color and appearance

Next, Plaintiffs challenge the requirement that taxicabs maintain a uniform color and appearance while the statute only imposes minimal constraints on the appearance of private vehicles-for-hire. The District is currently phasing in a requirement that taxicabs conform to a uniform color and marking system. *Id.* § 50-301.26(a)(3). Specifically, taxicabs must be painted red with a grey stripe on the side as specified in the regulations promulgated by the Taxicab Commission. D.C. Mun. Reg. tit. 31, § 503.3. By contrast, a private vehicle-for-hire is only required to "display a consistent and distinctive trade dress consisting of a logo, insignia, or emblem at all times while the operator is logged into the private vehicle-for-hire company's digital dispatch." D.C. Code § 50-301.29d (2016).

Defendant identifies three interests that justify the imposition of uniform appearance requirements on taxicabs while only imposing minimal requirements on private vehicles-for-hire: (1) helping customers identify taxicabs in order to arrange a ride by street hail, (2) assisting the District in identifying unlicensed vehicles responding to street hails, and (3) serving aesthetic and branding purposes for the District of Columbia. Plaintiffs do not provide any substantive response to the District's claim that the uniform scheme facilitates street hails. They say that private vehicles-for-hire effectively engage in street hails by allowing customers to choose vehicles that are nearby. But whether or not that is true, this statement does not respond to the justification identified by the District. Having the uniform red-and-grey appearance scheme self-evidently facilitates customers identifying taxicabs on the street in order to hail them. The Court concludes that this reason, standing alone, is enough to provide a rational justification for the distinction between the appearance requirements for taxicabs, which are allowed to accept street hails, and private vehicles-for-hire, which can only be engaged by digital dispatch. Therefore, the

Court need not consider the alternative reasons proffered by the District for the appearance requirements. Plaintiffs' Equal Protection challenge to these requirements, therefore, fails.

### 5.   Meter system

Plaintiffs next claim that the meter system mandated for taxicabs violates the Equal Protection Clause given the absence of such a requirement for private vehicles-for-hire. As explained above, taxicabs are required to have meter systems that allow the taxicabs to charge the metered fares set by the Taxicab Commission, which must satisfy certain regulatory requirements. *Id.* §§ 50-301.26(a)(1), 50-301.03(21). Private vehicles-for-hire are not required to maintain any metering system.

This claim needs little discussion. The Court's conclusion above that the distinction between the meter-based system for fares applicable to rides arranged by traditional dispatch or street hail (both by taxicabs) and the flexibility afforded to vehicles that are dispatched digitally survives rational basis review. So, too, it is rational that taxicabs, which can carry rides whose fares must be calculated by meter, are required to have meters meeting certain specific criteria, while private vehicles-for-hires, which cannot provide transportation services for which metered fares are required, are not required to have meters. Therefore, the Court need not delve into the parties' dispute regarding the local nature of the taxicab and private vehicles-for-hire businesses. For these reasons, Plaintiffs' Equal Protection challenge to this requirement fails.

### 6.   Dome light

Next, Plaintiffs challenge the requirement that taxicabs have dome lights "that clearly display a taxicab's identification number, as well as identify when a taxicab is occupied, on-call, off-duty, or available to accept a fare." *Id.* § 50-301.26(a)(2). Private vehicles-for-hire are not required to maintain a "dome light." The District's justification for this requirement is sufficient.

Because taxicabs are the only vehicles that may be hailed from the street, it is useful for passengers to determine whether or not a taxicab is in service and accepting passengers. The requirement that a "dome light" provide the vehicle's identification number also aids customers in reporting violations of the applicable rules to District regulators. By contrast, a customer has no need to identify a private vehicle-for-hire while standing on the street because such vehicles are barred from accepting street hails; instead, a mobile app is used to identify and dispatch a vehicle to the departure location chosen by a customer. Plaintiffs' allegations would not support the conclusion that there could be no rational basis for the distinctions in the applicable requirements, and this aspect of Plaintiffs' Equal Protection challenge fails.

### 7.  Credit card machine

Taxicabs are required to maintain on-board machines that can accept payment by credit card and debit cards and that meet certain requirements set by statute and regulation. *Id.* § 50-301.26(a)(1). Private vehicles-for-hire are not required to include a credit card machine. As with the dome light requirement, only minimal discussion is necessary for the Court to conclude that this distinction survives rational basis review. Private vehicles-for-hire can only be arranged by digital dispatch, where payment is via a mobile app. Therefore, there is simply no purpose for an in-car credit card machine in those vehicles. By contrast, taxicabs are able to accept street hails and rides arranged by telephone dispatch. It is not irrational for the District to require taxicabs to accept credit card payments for such rides. It is furthermore not irrational for the District to promulgate certain specific requirements regarding the machinery that enables such payments, including requirements that prevent overcharging customers and that safeguard the privacy of customers' financial information. For these reasons, the credit card machine requirement survives Plaintiffs' Equal Protection challenge.

**8. Licensure**

The Court now turns to the final aspect of Plaintiffs' Equal Protection claim, in which

Plaintiffs challenge the disparate licensing requirements for vehicle operators. Taxicab drivers

are required to maintain a Face ID, and every vehicle used as a taxicab must have an H-tag

license. *See* D.C. Mun. Reg., tit. 31, §§ 1000.1, 1010.30. Taxicab drivers are also required to

meet certain qualifications in order to qualify for a Face ID. *See generally* D.C. Code § 47-2829

(2016). By contrast, a private vehicle-for-hire operator is not required to have a Face ID, and a

private vehicle-for-hire is not required to have an H-tag. Compl. ¶ 63. However, a private

vehicle-for-hire operator is required to have a valid Maryland, Virginia, or District of Columbia

drivers' license and to undergo a background check. D.C. Code. §§ 50-301.29b, 50-301.29e(a)(3)

(2016). Certain categories of people, including people with specified past convictions or listings

on a sex offender registry, are barred from serving as a private vehicle-for-hire operator. *Id.* § 50-

301.29b(c).

Defendant argues that Plaintiffs have challenged only the expense of obtaining a Face ID

and H-tag, but not the underlying licensing, examination, and training requirements. In a

footnote in their Opposition, Plaintiffs respond that they are, in fact, challenging those

"discriminatory and unequal" requirements. Pls.' Opp'n at 23 n. 2. As support for that claim,

they reference only three paragraphs in their Complaint, but those paragraphs do not in fact

present such a challenge. Instead, those paragraphs emphasize only the expenses associated with

the licensing requirements for taxicab operators. *See* Compl. ¶ 34 ("[B]etween the costs of

licensure, required equipment, and enforcement, the Taxicab Service Plaintiffs and similarly

situated taxicab drivers incur thousands of dollars in expenses in order to comply with the

intricate framework of statutory and regulatory requirements enacted by the Council and

Commission for the purposes of public safety and consumer protection."); *id.* ¶ 63 ("Unlike the

Taxicab Service Plaintiffs, De Facto Taxicab Service Providers are not required *to undertake the expenses* of obtaining, maintaining, and renewing a Face ID license and H-Tag from the Commission.") (emphasis added). Finally, the Complaint indicates in a chart that, with respect to licensure, taxicab operators are required to have a Face-ID and H-tags, but that private vehicle-for-hire operators are "[o]nly required to have a valid DC, VA, or MD driver[']s license." *Id.* ¶ 70. The Court concludes that the Complaint does not encompass a challenge to the underlying licensing, examination, and training requirements. [10]

With respect to the requirements to obtain and maintain the licenses themselves, both the Face ID and the H-tag, the District argues that these requirements are necessary to ensure that taxicab operators and the taxicabs themselves meet the various statutory and regulatory requirements. This justification is adequate. Therefore, the Court concludes that Plaintiffs have not "plead[ed] facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.' " *Hettinga*, 677 F.3d at 479. Accordingly, this final aspect of Plaintiffs' Equal Protection challenge fails, as well.

*       *       *

With respect to the eight features of the statutory scheme discussed above, the Court concludes that Plaintiffs have not alleged distinctions drawn by the Vehicle-for-Hire Act that could constitute the basis for an Equal Protection claim. Nor have Plaintiffs identified any other distinctions in the statutory scheme that are outside these eight categories that could constitute the basis for such a claim. In sum, taken together, Plaintiffs' allegations could not support a

---

[10] Even if the Complaint was considered to encompass such a challenge to the licensing, examination, and training requirements, the Court would also conclude that Plaintiffs have not "plead[ed] facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.' " *Hettinga*, 677 F.3d at 479.

conclusion that there is no conceivable rational basis for the distinctions established through the

statutory scheme. *See Hettinga*, 677 F.3d at 479. Accordingly, Plaintiffs' Equal Protection claim

fails under the deferential standard of review that this Court must use in these circumstances,

where there is no allegation that the classification scheme affects a fundamental right or

somehow implicates a suspect class.

## B.  Substantive Due Process Claim

Plaintiffs claim that the District of Columbia has arbitrarily and capriciously deprived

them of their property interests in their taxicab service licenses and in their businesses in

violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.[11]

Defendant argues that Plaintiffs have not been deprived of a protected property interest and that,

even if they have been deprived of such an interest, there is a rational basis for such a

deprivation. For both of those reasons, Defendant argues, the complaint fails to state a

Substantive Due Process claim. The Court agrees with Defendant with respect to both arguments.

"The Due Process Clause of the Fifth Amendment provides that '[n]o person shall be ...

deprived of life, liberty, or property, without due process of law.' " *Ralls Corp.*, 758 F.3d at 315

(quoting U.S. Const. amend. V). " 'The first inquiry in every due process challenge is whether

the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' ' " *Id.* (quoting

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999)). "Absent a suspect classification or

infringement of a fundamental interest, the Fifth Amendment requires only a rational basis." *Am.*

*Fed'n of Gov't Employees, AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003). In

other words, in a case like this where there is no claim of the deprivation of a "fundamental

---

[11] Plaintiffs do not bring a claim under the Just Compensation, or Takings, clause of the Fifth
Amendment.

interest," Plaintiffs must show that there is no rational basis for the alleged deprivation. *See id.* (applying same standard for rational basis review with respect to Substance Due Process challenge as with respect to Equal Protection challenge).

The Court first turns to whether Plaintiffs have adequately alleged the deprivation of a protected property interest. The parties frame this first prong of the Substantive Due Process inquiry somewhat differently. Plaintiffs begin by stating that they have a protected property interest in their taxicab *licenses* themselves. Plaintiffs then state that they were deprived of this property right when the District of Columbia enacted the current scheme for regulating taxicabs along with other vehicles-for-hire, causing a devaluation of the taxicab licenses. By contrast, Defendant states that Plaintiffs do not have a protected property right in the *value* of their taxicab licenses. Therefore, they argue, any reduction in the value of Plaintiffs' taxicab licenses as a result of the statutory scheme could not constitute a deprivation of a protected property right. That said, these differences in the framing of the putative property right and the ensuing Substantive Due Process claim have no effect on the Court's conclusion: Plaintiffs have not adequately alleged the deprivation of a protected property interest.

In their Opposition, Plaintiffs argue that the District of Columbia has *completely deprived* them of the value of their taxicab licenses. Pls.' Opp'n at 26 ("Under the circumstances, it would be dishonest to say that Plaintiffs' taxicab licenses have not been entirely devalued."); *id.* ("This completely devalued the Face ID and H-tag licenses as the only means of providing for-hire transportation to the public in the District of Columbia."). However, this contention in Plaintiffs' Opposition is not reflected in their complaint. Instead, the Substantive Due Process claim in the Complaint is based on the allegation that the District of Columbia "has arbitrarily and capriciously deprived the Taxicab Service Plaintiffs of their property interests in their taxicab

service licenses and in the businesses they operate based upon District of Columbia law." Compl.

¶ 93. Indeed, elsewhere in the Complaint they allege that "Plaintiffs are suffering and will

continue to suffer as a result of the Vehicle-for-Hire Act because the market and collateral value

of their investments in licensing, specified taxicab equipment, and required PSP contracts *are*

*being or will be reduced* by the unequal application of District of Columbia law." *Id.* ¶ 87

(emphasis added). A reduction in the value of an investment is not tantamount to a complete

deprivation of value. And nowhere else in the Complaint do Plaintiffs allege that their licenses

have been completely deprived of value. Accordingly, the Court need not consider the result

were Plaintiffs to have adequately alleged such a deprivation.

Insofar as Plaintiffs have alleged that, as result of the Vehicle-for-Hire Act, the District of

Columbia has deprived them of the value of their licenses by reducing the value of such licenses,

the Court concludes that such a result does not constitute the deprivation of a protected property

interest. The Court agrees with the conclusion of the Eighth Circuit Court of Appeals, in

considering the constitutional ramifications of a change to a municipal scheme governing the

issuance of taxicab licenses, that "the taxicab licensees do not have protected property interests

in the market value of their licenses."[12] *Minneapolis Taxi Owners Coal., Inc. v. City of*

_____

[12] Plaintiffs argue that there are material differences between the scheme under consideration by
the Eighth Circuit in *Minneapolis Taxi Owners Coalition* and the scheme under consideration by
this Court. While the substantive changes to the two schemes indubitably differ, none of those
changes are material to the legal analysis required. Indeed, in *Minneapolis Taxi Owners
Coalition*, the parties agreed that the statutory changes completely eliminated the market value of
the taxicab licenses. 572 F.3d at 507. By contrast, here, Plaintiffs do not even allege that the
changes to the statutory scheme completely deprived them of the market value of their licenses.
*Cf.* Compl. ¶ 83 (alleging reduction in the value of investments). Moreover, the conclusion of the
Eighth Circuit is applicable to any government-caused reduction in the value of taxicab licenses,
whatever the precise nature of the government action triggering that decrease. *See Minneapolis
Taxi Owners Coal.*, 572 F.3d at 509-10.

*Minneapolis*, 572 F.3d 502, 510 (8th Cir. 2009); *see also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012) (holding that taxicab license did not constitute protectable property interest).[13] Accordingly, any reduction in the value of Plaintiffs' licenses traceable to the challenged statutory scheme does not constitute the deprivation of a protectable property interest.

In addition, the Court emphasizes that the District of Columbia has not deprived Plaintiffs of the core property right associated with the taxicab license: the monopoly on certain transportation services, including carrying passengers for trips initiated by street hail. Despite their rhetoric suggesting that their businesses have been fatally undermined, Plaintiffs nowhere contest that they retain a collective monopoly over certain types of services. Nor could they contest this proposition as District of Columbia law remains clear regarding this collective monopoly, as described above. *See generally* D.C. Code § 50-303 (2016).

It may well be that the right to carry passengers for trips initiated by street hail or traditional dispatch has declined in value as a result of the advent of digital dispatch— implemented famously by companies such as Uber and Lyft. It may well also be that the legalization of such services in the District of Columbia, without requiring such operators to comply with the various requirements applicable to taxicabs discussed above, has contributed to the decline in the value of such licenses in the District of Columbia. But such a combination of facts, as alleged, cannot serve as the basis for a Substantive Due Process claim for the reasons explained above.

---

[13] The Court also notes that in *Illinois Transp. Trade Ass'n v. City of Chicago*, for which Plaintiffs rely for its Equal Protection analysis, the district court judge concluded that the value of the taxicab licenses at issue did not constitute a protectable property interest. NO. 14-cv-827, 2015 WL 5610880, at *3 (N.D. Ill. Sept. 22, 2015).

The Court's conclusion that Plaintiff has not alleged the deprivation of a protected property interest is sufficient to require dismissing this claim. Nonetheless, the Court now turns to the second prong of the Substantive Due Process analysis, which provides a second reason that the Substantive Due Process claim must be dismissed. Under the second prong of the Substantive Process inquiry, the Court must assess whether Plaintiffs can show that there is *no* "conceivable rational basis" for the legislative scheme that caused the deprivation. *Waters v. Rumsfeld*, 320 F.3d 265, 269 (D.C. Cir. 2003). The Court concluded above, with respect to Plaintiffs' Equal Protection claim, that Plaintiffs have not pleaded "facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification' " established through the challenged legislative scheme. *Hettinga*, 677 F.3d at 479. There is no need to repeat that analysis again. For those same reasons, the Court concludes that, even if Plaintiffs had adequately alleged the deprivation of a constitutionally protected property interest, Plaintiffs have not pleaded facts that would allow a conclusion that there no conceivable rational basis for the deprivation. Accordingly, for both of these independent reasons—the absence of the deprivation of a protected property interest and the absence of allegations that would allow the conclusion that there was no rational basis for the alleged deprivation—Plaintiffs' Complaint fails to state a Substantive Due Process claim.

## C.  Home Rule Act Claim

Finally, Plaintiffs claim that the District of Columbia exceeded its authority under the D.C. Home Rule Act, in light of the alleged constitutional violations, in promulgating the challenged statutory and regulatory scheme. The Court agrees with Defendant that Plaintiffs have provided no basis for the Court to find that the Home Rule Act provides an independent cause of action for the violations alleged in this case. In any event, because the Court has concluded that

27

Plaintiffs' constitutional claims fail for the reasons explained above, Plaintiffs' claims under the

Home Rule Act must fail, as well.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant District of Columbia's

[9] Motion to Dismiss. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 18, 2016

                /s/
                COLLEEN KOLLAR-KOTELLY
                United States District Judge